UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>Plaintiff,<br><br>v.<br><br>GVERIFIER TECHNOLOGIES LLC d/b/a G VERIFIERS AND G VERIFIER PRO; GVERIFIER SOFTECH SERVICES LLC d/b/a G VERIFIERS AND G VERIFIER PRO; SHRI HARI GOMARKETIN LLC d/b/a GHYPER, GHYPERLOCAL, and G VERIFICATIONS; INFINITY GOMARKETIN LLC d/b/a GHYPER, GHYPERLOCAL, and G VERIFICATIONS; and DOES 1-25,<br><br>Defendants. | Case No. 2:22-cv-4182<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

This action seeks to stop a large-scale scam operation aimed at misleading small businesses and consumers for financial gain. Defendants GVerifier Technologies LLC d/b/a G Verifiers and G Verifier Pro; GVerifier Softech Services LLC d/b/a G Verifiers and G Verifier Pro; Shri Hari GoMarketin LLC d/b/a GHyper, GHyperlocal, and G Verifications; and Infinity GoMarketin LLC d/b/a GHyper, GHyperlocal, and G Verifications (collectively "**G Verifier**" or "**Defendants**") make false and misleading statements about their identity, products, and supposed affiliation with Plaintiff Google LLC ("**Google**") in order to maliciously exact payments and sell fake or worthless services. These practices violate federal and state laws. Google brings this action to end G Verifier's wrongful conduct; stop the ongoing financial and reputational harm that G Verifier is

1

causing Google; and prevent G Verifier from further harassing, deceiving, and defrauding small business owners and consumers.

## PARTIES

1.     Google is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

2.     Defendant GVerifier Technologies LLC d/b/a G Verifiers and G Verifier Pro is a limited liability company organized under the laws of the State of Ohio with its principal place(s) of business at 33 East Gay Street, Suite 224, Columbus, Ohio 43215 and/or 4655 Hilton Avenue, Apartment C, Columbus, Ohio 43228. Google is informed and believes, and on that basis alleges, that the sole member and manager of GVerifier Technologies LLC is Kaushal Patel ("**Mr. Patel**"), who is a resident and citizen of Ohio.

3.     Defendant GVerifier Softech Services LLC d/b/a G Verifiers and G Verifier Pro is a limited liability company organized under the laws of the State of Ohio with its principal place(s) of business at 33 or 35 East Gay Street, Suite 224, Columbus, Ohio 43215 and/or 4655 Hilton Avenue, Columbus, Apartment C, Ohio 43228. Google is informed and believes, and on that basis alleges, that the sole member and manager of GVerifier Softech Services LLC is Bharat Parekh ("**Mr. Parekh**"), who is a resident and citizen of Ohio.

4.     Defendant Shri Hari GoMarketin LLC is a limited liability company organized under the laws of the State of Ohio with its principal place of business at 4655 Hilton Avenue, Apartment C, Columbus, Ohio 43228. Google is informed and believes, and on that basis alleges, that Mr. Parekh is the sole member and manager of Shri Hari GoMarketin LLC. Google is informed

and believes, and on that basis alleges, that Defendant Shri Hari GoMarketin LLC has registered the trade name GHYPERLOCAL in Ohio for use in conducting the activities described herein.

5.      Defendant Infinity GoMarketin LLC is a limited liability company organized under the laws of the State of Ohio with its principal place of business at 6738 Darylane Drive, Dublin, Ohio 43017. Google is informed and believes, and on that basis alleges, that Defendant Infinity GoMarketin LLC has registered the trade names G VERIFICATIONS and GHYPER in Ohio for use in conducting the activities described herein.

6.      Google is informed and believes, and on that basis alleges, that Defendants jointly operate the common scheme alleged below. Numerous facts connect Defendants to one another:

(a)   Defendants share highly similar business and trade names. GVerifier Technologies LLC's and GVerifier Softech LLC's registered business names each feature "GVerifier," and Infinity GoMarketin LLC has registered the trade name G VERIFICATIONS. Shri Hari GoMarketin LLC and Infinity GoMarketin LLC also share the distinctive "GoMarketin" spelling. On information and belief, Infinity GoMarketin LLC has held itself out to consumers as "G VERIFIER TECHN" and "G Hyperlocal," as well as registering the trade name GHYPER. On information and belief, Shri Hari GoMarketin LLC has held itself out to consumers as "G Hyperlocal," as well as registering the trade name GHYPERLOCAL. In addition, some consumers contacted by "G Verifier" who paid for the purported services described herein received an invoice or receipt from a domain owned or controlled by Shri Hari GoMarketin LLC and noticed

3

credit card charges from "G Hyperlocal," suggesting that this Defendant is also holding itself out as "G Verifier."[1]

(b) Defendants share common addresses and phone numbers, including but not limited to the following:

    (i) GVerifier Technologies LLC and GVerifier Softech LLC both list the same Columbus business address (33 or 35 East Gay Street, Suite 224) [2] on their registration filings with the Ohio Secretary of State. That address has also appeared on websites using those Defendants' business names at gverifiers.com and gverifier.com.[3]

    (ii) Mr. Parekh of GVerifier Technologies LLC shares an address with Shri Hari GoMarketin LLC, and that address also appears on the websites gverifierpro.com and g-verifier.com.

    (iii) Infinity GoMarketin LLC identifies the address 6738 Darylane Drive, Dublin, Ohio, on its business and trade name registration documents, and that address also appears on ghyper.com and associated social media pages. In addition, some consumers contacted by "G Verifier" who paid for the purported services described herein received an invoice or receipt bearing that address.

---

[1] Specifically, the communications came from an email address with the domain "ghyperlocal.com." Shri Hari Go Marketin stated in its trade name registration that it conducts business through this domain.

[2] Google is informed and believes, and on that basis alleges, that 33 East Gay Street, Suite 224 and 35 East Gay Street, Suite 224 are the same address.

[3] gverifier.com is no longer accessible, but some of its previous content, including the contact information described herein, can be viewed via the WayBack Machine. In addition, consumers contacted by G Verifier receive communications from email addresses associated with that domain, such as support@gverifier.com.

(iv)    The phone number 800-986-6740 was previously listed on the website gverifier.com, and the nearly identical 800-986-6470 phone number currently appears on ghyperlocal.com. Further, some of G Verifier's victims who paid money to individuals with a caller ID containing the term "G VERIFIER" later received a payment confirmation or invoice listing the 800-986-6470 number.

(c)  Defendants share common officers and personnel. Mr. Patel of GVerifier Softech LLC registered a trade name for "Gverifier Technologies LLC." Mr. Parekh of GVerifier Technologies LLC and Shri Hari GoMarketin accepts forwarded mail at a residential address in Dublin, Ohio belonging to Mr. Patel of GVerifier Softech Services LLC, further indicating that Mr. Parekh and Mr. Patel are associates.

7.    Google does not know the true names and capacities of those defendants sued as DOES 1-20 (the "**Doe Defendants**"), and therefore sues them under fictitious names. On information and belief, the Doe Defendants have participated in the scheme at issue in this Complaint, including by directing, aiding, and/or assisting the named Defendants in connection with the wrongful acts alleged herein. Google is unable to identify all such Doe Defendants by name because Defendants have purposely obscured the identities and acts of the specific individuals and entities that have directed or otherwise participated in the scheme. Google will amend this Complaint to allege the true names and capacities of these Doe Defendants when they are ascertained.

## JURISDICTION AND VENUE

8.    This action arises under the federal Lanham Act, as amended, 15 U.S.C. § 1051 *et seq.* (the "**Lanham Act**"); the federal Telemarketing Act, 15 U.S.C. § 6101 *et seq.*; Ohio common

and statutory unfair competition law; and California contract law.

9.      The total amount in controversy in this action exceeds $75,000.

10.     This Court has jurisdiction over the subject matter of this action under 15 U.S.C. §

1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

11.     This Court has personal jurisdiction over Defendants because they maintain their

principal place(s) of business in the State of Ohio and in this judicial district.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2)

because all Defendants reside within this judicial district and in the State of Ohio, and because a

substantial part of Defendants' conduct giving rise to Google's claims occurred at their principal

places of business or elsewhere within this judicial district. Venue is proper in the Eastern Division

of this judicial district pursuant to S.D. Ohio Civil Local Rule 82.1 because all Defendants are

residents of Franklin County.

## GOOGLE, THE GOOGLE MARK, AND THE G DESIGN MARK

13.     Google is a well-known provider of search engine, mapping, web application and

other products and services used widely by businesses and consumers.

14.     Since its inception in 1998, Google has devoted substantial time, effort, and

resources to the development and extensive promotion of its goods and services under the

GOOGLE trademark. As a result, the GOOGLE mark has acquired significant recognition in the

marketplace and has come to embody the substantial and valuable goodwill of Google.

15.     To protect the GOOGLE mark for its exclusive use and as notice to the public of

its claim of ownership therein, Google owns numerous trademark registrations for the GOOGLE

mark and variations thereof, including but not limited to: U.S. Registration Nos. 2,806,075;

2,884,502; 4,058,966; 4,120,012; 4,123,471; 4,168,118; 4,202,570; 4,217,894; 4,525,914; 5,324,609; 5,324,610; and 6,373,292.

16. In addition to its famous GOOGLE mark, Google also uses a "design mark" (colloquially called a logo) that consists of the letter "G" drawn in Google's proprietary logotype and typically featuring Google's distinct multi-color sequence of red, yellow, green, and blue (the "**G Logo**," displayed below).



17. The G Logo is used to signify and represent Google in compact or space-constrained contexts. Google has used the G Logo in U.S. commerce since at least as early as 2015, and it owns federal trademark registrations for such logo, including but not limited to U.S. Registration Nos. 5365541; 5,520,292; and 5,520,297.[4]

18. Due to its extensive and widespread use of the G Logo for more than seven years, that mark has widespread recognition among consumers as a symbol of Google and its services.

## GOOGLE BUSINESS PROFILES

19. Among its other services, Google offers a search engine, Google Search, and a mapping tool, Google Maps. Both Search and Maps contain "Business Profiles" with details of businesses, service providers, and other places of interest. Business Profiles span an enormous variety of businesses and professionals, including restaurants, car mechanics, accountants,

---

[4] Google's priority date in the G Logo, based on its claim of foreign priority under Section 44(d) of the Lanham Act in U.S. Registration No. 5,365,541, is August 24, 2015.

dentists, hair salons, law firms, government agencies, retail stores, amusement parks, and other kinds of goods or service providers.

20.     With Search and Maps, users can explore and search for businesses in a given area. The resulting Business Profiles display certain information about a business, including its street address, hours, website, phone number, and so on. Business Profiles also display user-submitted reviews of the associated business. It is important to consumers that all of this information be authentic and accurate. Likewise, because consumers often use Google tools to identify businesses and decide which ones to patronize, many business owners—and especially small business owners—find Business Profiles important for attracting and maintaining customers.

21.     For several years, Google has offered businesses tools to claim and manage their Business Profiles. To claim a Business Profile, a person must verify that they are the owner or other authorized representative of the business. Following this verification process, the person becomes the profile's "owner" and may suggest edits to that business's Business Profile, grant other users access to the account, and use various other tools and features. For instance, verified business owners and their authorized representatives can update their hours, address, or website, and they can add photos or promotional offers.

22.     Google offers the above-described Business Profile management tools free of charge and has done so at all times relevant to this Complaint. Business Profile owners are not—and have never been—required to pay Google to claim, verify, maintain, or manage their profiles.

## G VERIFIER'S MISLEADING AND INFRINGING ACTIVITIES

### *Extracting Money from Business Profile Owners*

23.     Google is informed and believes, and on that basis alleges, that Defendants purport to operate a digital marketing company that provides services to verify, manage, modify, or

optimize a business's Google Business Profile. Defendants market and sell their services through two substantially-identical websites at gverifiers.com and gverifierpro.com and a third highly similar website at g-verifier.com (together, the "**G Verifier Websites**"), as well as the websites ghyperlocal.com and ghyper.com, and through telephone marketing calls.

24.     Google is informed and believes, and on that basis alleges, that G Verifier regularly places unsolicited telephone marketing calls to Business Profile owners throughout the United States and Canada. During these telephone calls, which primarily target small businesses, G Verifier sales agents falsely represent to business owners that they must pay a fee in connection with their Business Profiles.

25.     Google is informed and believes, and on that basis alleges, that G Verifier's false or misleading claims include, but may not be limited to, the following:

(a) That unless a business "verifies" or "validates" its Google listing with G Verifier, Google will label the business "permanently closed"; will remove, "deactivate," or "disable" its Business Profile; will delete or hide positive reviews for the business; or will demote results related to the business in Search so consumers will be unable to find it.

(b) That a business can only avoid the above issues by paying a fee, with the express or implied message that such fee is required by Google.

(c) That, for a payment, G Verifier can cause the business to be displayed among the top results in Google Search.

(d) That G Verifier is a "department of Google" or is otherwise a part of Google, or that it "works for Google" to verify or validate business listings.

9

26.     The G Verifier Websites also make false promises regarding search prioritization and ranking. For instance, G Verifier tells business owners that they will "[g]et the first page on Google search" and that "[i]f you buy the service from us, your Google Maps business location will come first in Google search." These statements, which imply superior placement among organic search results, are false and deceitful. No service can guarantee that Google's search engine, which uses a complex algorithm, will place a particular webpage on the first page of results, much less that it will be the very first result.

27.     G Verifier demands a payment, typically USD $99.00, to "verify" a Business Profile, ensure that a Business Profile is not "deactivated" or otherwise adversely affected, or provide search prioritization services, all marketed through the false and misleading representations described above.

28.     Google is informed and believes, and based thereon alleges, that Defendants' misrepresentations are material because, among other reasons, first-page placement in Search is an important factor consumers consider in conducting transactions related to Business Profile accounts, and because avoiding deactivation or disabling of a Business Profile, as well as avoiding being labeled as "permanently closed," are also important to business owners' decisions to purchase Defendants' services. Likewise, the misrepresentation that G Verifier is a department of or otherwise a part of Google, or is working for or on behalf of Google, is also material in business owners' decisions to pay Defendants.

### *G Verifier's Misuse of the GOOGLE Mark*

29.     Google is informed and believes, and on that basis alleges, that to gain their victims' trust and to mislead them concerning their relationship to Google, G Verifier's sales agents routinely use the GOOGLE mark on their marketing calls in order to misrepresent that they are in

fact Google employees or are otherwise calling on Google's behalf. If they disclose that they are calling from G Verifier, the sales agents use the GOOGLE mark to falsely claim or imply that G Verifier is a part of Google, or that it is authorized or endorsed by or otherwise affiliated with Google.

30.     G Verifier's agents routinely further such false impressions during their telephone solicitation calls by sending Business Profile merchants text messages with "verification codes" that they claim come from Google. The codes that G Verifier sends are in fact meaningless, but are designed to resemble the legitimate authentication codes that Google sends to users via text message as part of its two-factor security practices.[5] By mimicking these authentication codes during telemarketing calls, G Verifier's agents bolster the misimpression that they have access to Google's systems and therefore are a part of Google or otherwise authorized by Google.

31.     G Verifier also uses the GOOGLE mark in some payment-related communications with businesses who sign up for its services. For example, payment confirmations sent to some consumers are emailed from an address that displays as "Google Receipt," or from the email address no-reply@googlereceipt.com, and the term "Google Receipt" has also appeared in place of the business name in contact information in such communications, as shown below:

PH: 18009866470, Google Receipt, 6738 Darylane Drive , Dublin, Ohio 43017, UNITED STATES

Google is informed and believes, and on that basis alleges, that the purpose of using the GOOGLE mark in payment confirmations is to maintain the misleading impression that the charge is from Google in order to provide legitimacy and reduce refund requests or disputed charges.

---

[5] So-called "two-factor authentication" enhances security for an online account by requiring a user to provide a second piece of information—often a code received by text message or email—in addition to a password.

32.     G Verifier intends for its unauthorized and misleading use of the GOOGLE mark to mislead users into believing it is Google or acting on behalf of Google, rendering Business Profile owners more likely to believe G Verifier's false statements about its services and provide payment information to G Verifier.

### *G Verifier's Infringing Logos*

33.     As part of their scam tactics, Defendants have adopted names and logos intended to evoke Google, mimic its branding indicia, and mislead consumers concerning the relationship of Defendants and their sales agents to Google.

34.     Defendants' logos (the "**G Verifier Logos**") feature the word component G VERIFIER, paired with a design of red, blue, green, and yellow bars that copies the distinctive color scheme that Google uses for its G Logo as well as numerous other design marks and icons. G Verifier also uses a sans serif font for the G Verifier Logos that mimics the proprietary typeface used by Google for its marks. The graphics below depict variations of the G Verifier Logos as used on the websites gverifiers.com and gverifierpro.com, respectively.

     

The website g-verifier.com uses a slightly different design element, as shown below.



35.     Google uses the same color series not only for its G Logo, as shown in Paragraph 16, but also for a variety of other logos and branding indicia. The following graphic depicts several such logos that feature this color series.



36.     In addition, Google's branding often features the G Logo paired with another mark or term, such as in the examples below.



37.     Consumers familiar with Google's G Logo are highly likely to perceive Defendants' G Verifier Logos as indicating a "Google Verification" service that emanates from Google. This is especially true in light of: (i) the nature of Defendants' services, which are marketed as complementary to, or even a part of, Google's offerings, (ii) Defendants' use of a font

that is visually similar to the proprietary typography used by Google, and (iii) Defendants' use of a color scheme identical to that employed by Google for its G Logo and many other branding elements.

38.     Google is informed and believes, and on that basis alleges, that consumers have been confused by sales agents' use of the G VERIFIER mark on Defendants' telemarketing calls, which in the context of such calls misleads consumers to believe that the verification service offered by Defendants is provided by or on behalf of Google. As further indication of Defendants' intent to confuse consumers concerning their relationship to Google, the G Verifier Websites contain graphics and illustrations whose style closely resembles that found on Google's websites and publications. For instance, the two images below appear on the G Verifier Websites:







These images emulate the design style and color schemes that are found in Google publications and websites—for instance, those on Google's main support website at support.google.com:



39.     G Verifier's use of such colors, design schemes, and illustrations on the G Verifier Websites reinforces the false impression that G Verifier is associated with Google, compounding the likelihood of confusion caused by the G Verifier Logos and Defendants' unauthorized use of the GOOGLE mark during telephone solicitations. A user visiting the G Verifier Websites, whether during or following a phone call with a G Verifier agent, would be more inclined based on the appearance of the G Verifier Websites to incorrectly believe that G Verifier is associated with or endorsed by Google.

40.     In addition to the infringing G Verifier Logos, Defendants also use the G HyperLocal logo (the "**G HyperLocal Logo**") shown below.



41. Google is informed and believes, and on that basis alleges, that Defendants use the G HyperLocal Logo on www.ghyperlocal.com and related social media accounts, and on some payment-related communications sent to small businesses who purchase their services. In addition, charges for Defendants' services often show up on consumers' bank or credit card statements as charges from "Ghyperlocal."

42. Like the G Verifier Logos, the G HyperLocal Logo utilizes a design featuring the same four-color palette associated with Google. It also uses virtually the same stylization for the "G" component that Google uses for its G Logo.

43. The use of color around the "G" component in the G HyperLocal Logo closely resembles variations on Google's G Logo, including those reflected in U.S. Registration Nos. 6,486,503 and 6,030,522, shown below.




44. There are other indicia of an intent to confuse consumers into believing that the G HyperLocal Logo indicates an affiliation with Google. For instance, like the G Verifier Websites, ghyperlocal.com makes use of graphics that mimic the style of graphical elements on Google's

websites. Moreover, ghyperlocal.com prominently features Google's GOOGLE design mark on its home page, as shown below.



45.     Defendants' use of such graphics on ghyperlocal.com, as well as their use of similar colors and stylization for the G HyperLocal Logo as that used for Google's G Logo, reinforces the false impression that Defendants are associated with Google. A user who visits ghyperlocal.com, including those who receive payment confirmation or a credit card charge from "G Hyperlocal," would be more inclined to incorrectly believe that the entity from which they purchased services is associated with or endorsed by Google.

46.     In addition to the G HyperLocal Logo depicted above, Defendants also use a variant of that logo without the word "Local," as shown below.



Currently, Defendants use this variation on "G Hyper" Facebook and Twitter pages.[6]

---

[6] *See* https://twitter.com/ghyperofficial?lang=en; https://www.facebook.com/ghyperofficial/.

47.     Google is informed and believes, and based thereon alleges, that G Verifier's use of the GOOGLE mark, the G Verifier Logos, and the G HyperLocal Logo (including in its variant form without "Local") as described above is likely to cause and has caused confusion among business owners regarding the relationship between Google and G Verifier and their respective services, including that Google is associated with G Verifier or that Google approves of or endorses G Verifier, its telemarketing calls, or its services.

### *Injuries Inflicted by G Verifier's Infringement and Misrepresentations*

48.     An appreciable number of Business Profile merchant users contacted by G Verifier have fallen victim to G Verifier's misrepresentations and paid it for non-existent services related to their Business Profile accounts. Some of G Verifier's victims have explicitly cited their confusion of G Verifier with Google as a reason for their decision to trust G Verifier and pay needless and fraudulent "fees." Numerous business owners who have paid G Verifier report that its agents' repeated representations that they were calling on behalf Google, as well as their use of sham verification codes that resemble the genuine codes that Google uses, were instrumental in convincing the business owners that failure to pay would adversely affect their Business Listings— and, as a result, their goodwill, publicity, and revenue. Some business owners also shared that they were misled by the name "G Verifier," which connotes a verification service of Google when Defendants use that name in reference to services connected with Google.

49.     Since approximately December 2021, hundreds and hundreds of Business Profile merchants have contacted Google to complain about G Verifier's harassing and deceptive scheme. Many of these merchants failed to realize that they had been scammed until after they had paid G Verifier. Such merchants report having paid G Verifier for services that were illusory (*e.g.*, because

they did not need to pay for Google to continue to display their Business Profile) or were never fulfilled.

50. Defendants' conduct described herein also harms Google by inducing consumers to believe that Google charges for these services, which Google, in fact, offers free of charge. Google's goodwill with its users, whether business owners or patrons, is based in part on being a free and user-friendly service. If business owners believe that Google charges for this service, removes Business Profiles, marks businesses as "permanently closed," or otherwise affects their search placement unless payment is provided, such business owners are likely to be dissuaded from creating or continuing to maintain a Business Profile. Their trust in Google and the goodwill Google has accrued in its services are likely to be harmed, and they may be less likely to use other Google services or platforms as well.

51. In addition to pressuring business owners into paying for a service that Google offers free of charge, G Verifier also dupes some business owners into purchasing a product it cannot and does not intend to deliver: a guaranteed first-page listing among organic search results. By misrepresenting its relationship with Google and never providing the claimed service, business owners are likely to attribute such failure to Google or blame Google for it, thus further harming Google's reputation and goodwill.

52. Even when business owners do not provide G Verifier with payment, G Verifier's aggressive use of unsolicited telemarketing calls harms Google's goodwill. Many business owners report receiving phone calls from G Verifier on a weekly or even daily basis, including after they have requested that G Verifier remove their number from its call lists. Consumers often find these types of calls harassing and associate them with unscrupulous business practices. As a result, even when business owners do not provide G Verifier with payment, they are likely to have a negative

impression of Google if, due to G Verifier's misrepresentations and infringing use of the GOOGLE

mark, they believe that Google engages in this kind of aggressive and overbearing marketing.

### *Defendants' Sale of Fake Google Business Listing Reviews*

53.     Among their other features and content, Business Listings display user-created

reviews of the business ("**Local Reviews**"). Local Reviews are a type of user-generated content

that users can submit to be displayed on a number of Google properties, including Search and

Maps. As part of submitting a Local Review, users may award a business between one and five

stars, and they can also post a narrative description of their experiences with the business. Once a

user creates a review, that review (along with the user's name and profile picture) is visible on the

business's profile to all. An example of a Local Review on a Business Profile appears below.



54.     Anyone browsing the Internet can view Business Profiles and Local Reviews, but

a user must create and log into a free Google account in order to post a review.

55. To be useful to consumers, these reviews must be based on the reviewers' real-world genuine experiences.

56. Local Reviews are critically important to users, businesses, and Google. Users rely on reviews to make informed decisions about which businesses to patronize (or not). Businesses, in turn, stand to gain when satisfied customers post positive reviews that direct new customers their way. Google, for its part, benefits from maintaining a helpful service that users will turn to for accurate and trustworthy information.

57. G Verifier fully understands the importance of Local Reviews. As the G Verifier Websites put it, "[m]ore and more positive Google reviews help increase your customer base which in turn increases your sales" and "[p]ositive reviews are a form of social proof of your business that helps customers make purchasing decisions."[7]

58. By contrast, when reviews are fake or misleading, everyone involved suffers. Users may be provided inaccurate information. Businesses with legitimate reviews may lose revenue to those with illegitimate positive reviews. And Google may lose credibility and goodwill among misled users and frustrated businesses, making both less likely to turn to Google products in the future.

59. But G Verifier is indifferent to these concerns, preferring to exploit online reviews for its own financial gain. On the G Verifier Websites, G Verifier proudly sells fraudulent reviews. G Verifier markets this service as the innocuous-sounding "Online Reputation Management,"[8] but even a cursory glance at the G Verifier Websites reveals what is really for sale. On their Frequently

---

[7] https://gverifierpro.com/faq.html; https://gverifiers.com/faq.html
[8]    https://gverifiers.com/online-reputation-management.html;    https://gverifierpro.com/online-reputation-management.html

Asked Questions pages, the G Verifier Websites discuss just one product: fake Google reviews, both positive and negative. For instance:

> Q: Why should I buy Google reviews from you?
>
> A: We provide good quality service at very low costs. We always give a 100% satisfaction guarantee to our customers. Our customer service is open 24/7. So, you can contact us any day at any time. We are delivered our work on time.

60.     The G Verifier Websites do not pretend that the reviews they sell come from real customers. G Verifier touts that it uses Virtual Private Networks ("**VPNs**"), a technology that can permit a user to change the location associated with their IP address while using online services. "You can take reviews from the country or place of your choice," G Verifier tells businesses, because "we usually use [a] very good quality VPN to give such reviews." Going a step further, G Verifier even invites businesses to write their own fake reviews, which G Verifier will then post for them: "You can of course provide your writing."

61.     Worse still, G Verifier offers the option of essentially flooding a competitor's Business Profile with fake negative reviews or ratings:

> Q: Can I Buy a Negative Review?
>
> A: Yes, You can. If you would like to buy a negative review please mention it after buying our Services. Also, can you tell us how many stars you want to give this business place?

62.     Given G Verifier's representations, Google is informed and believes, and on that basis alleges, that G Verifier in fact does sell and post fraudulent positive and negative reviews on Business Profile listings using Google products including Search and Maps.

### **GOOGLE'S TERMS OF SERVICE**

63.     When a user signs up for a Google account—a prerequisite for posting reviews on Business Listings using Search or Maps—they must expressly agree to the Google Terms of Service ("**TOS**").[9] Using Google's online systems to send verification codes by text message or email also requires a user to agree to the TOS. The TOS governs a user's relationship with Google,

---

[9] https://policies.google.com/terms?hl=en-US.

permitting them to use Google's services and obligating them to follow certain rules and guidelines. Users agree as part of the TOS that "California law will govern all disputes arising out of or relating to these terms."[10]

64.     The TOS prohibits "misleading, defrauding, [and] illegally impersonating" others, as well as "abus[ing], harm[ing], interfer[ing] with, or disrupt[ing] the services — for example, by accessing or using them in fraudulent or deceptive ways."[11]

65.     The TOS also incorporates by reference various "service-specific additional terms" that apply to individual Google products, including Maps. At all relevant times, the TOS have incorporated the Maps User Contributed Content Policy, which is designed to "ensure everyone viewing user contributed content has a positive experience while also keeping Maps fair and honest."[12] These additional terms provide that "[c]ontributions must be based on real experiences and information," and they prohibit "[d]eliberately fake content" and "incorrect content."[13] Accordingly, they prohibit "[c]ontent that is not based on a real experience and does not accurately represent the location or product in question" as well as "[c]ontent that has been posted by a competitor to undermine a business or product's reputation."[14]

## COUNT 1: FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

66.     Google re-alleges and incorporates by reference all preceding paragraphs as if fully set forth here.

67.     Google owns the inherently distinctive, strong, valid, and registered GOOGLE trademark and G Logo.

---

[10] *Id.*

[11] https://policies.google.com/terms?hl=en-US#toc-what-we-expect

[12] https://support.google.com/contributionpolicy/answer/7422880?hl=en&ref_topic=7422769.

[13] *Id.*

[14] https://support.google.com/contributionpolicy/answer/7400114?hl=en&ref_topic=7422769.

68. Without Google's consent, Defendants have used the GOOGLE mark and logos that are confusingly similar to the G Logo in commerce to advertise, offer, and render Defendants' services.

69. Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with Google, as to the true source of Defendants' services, and as to the sponsorship or approval of Defendants or Defendants' services or telemarketing activities by Google.

70. Defendants are not affiliated or associated with Google or its services, and Google does not approve of or sponsor Defendants or any of Defendants' activities or services.

71. Defendants' actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with Google and its trademarks.

72. The actions of Defendants described above constitute trademark infringement in violation of 15 U.S.C. § 1114(1). Specifically, Defendants' use of the GOOGLE mark infringes Google's rights in that mark. In addition, Defendants' G Verifier Logos and G HyperLocal Logo, when used in connection with Defendants' services, are confusingly similar to the G Logo and likely to cause confusion among relevant consumers, infringing Google's rights in the G Logo.

73. Google has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court. Google has no adequate remedy at law in that the amount of harm to Google's business and reputation and the diminution of the goodwill of the GOOGLE mark and G Logo are difficult to ascertain with specificity. Google is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

74. Google is entitled to damages in an amount to be determined at trial and to any profits made by Defendants in connection with their infringing activities.

75.    Defendants' infringement of the registered GOOGLE mark and G Logo is deliberate, willful, fraudulent, and without extenuating circumstances, and constitutes a knowing use of Google's trademarks, or marks confusingly similar thereto. Defendants' infringement is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Google is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

## COUNT 2:  FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)(1)(A))

76.    Google re-alleges and incorporates by reference all preceding paragraphs as if fully set forth here.

77.    Google owns the inherently distinctive, strong, valid, and registered GOOGLE mark and G Logo, in addition to common law trademark rights nationwide in both such marks.

78.    Without Google's consent, Defendants have marketed and sold in commerce services in connection with the GOOGLE mark and logos that are confusingly similar to the G Logo.

79.    Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendants with Google, as to the source of Defendants' services, and as to the sponsorship or approval of Defendants or Defendants' services by Google.

80.    Defendants' actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A). Specifically, Defendants' use of the GOOGLE mark infringes Google's rights in that mark. In addition, Defendants' G Verifier Logos and G HyperLocal Logo, when used in connection with Defendants' services, are confusingly similar to the G Logo and likely to cause confusion among relevant consumers, infringing Google's rights

in the G Logo.

81. Google has been, and will continue to be, damaged and irreparably harmed by Defendants' actions, which will continue unless Defendants are enjoined by this Court. Google has no adequate remedy at law in that the amount of harm to Google's business reputation and the diminution of goodwill of Google's trademarks are difficult to ascertain with specificity. Google is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

82. Defendants' unfair competition and false designation of origin are deliberate, willful, fraudulent, and without extenuating circumstances. Defendants' conduct is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Google is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

## COUNT 3: FEDERAL FALSE ADVERTISING (15 U.S.C. § 1125(a)(1)(B))

83. Google re-alleges and incorporates by reference all preceding paragraphs as if fully set forth here.

84. As alleged above, Defendants have made false and misleading claims regarding their relationship with Google and have misrepresented the nature, characteristics, and qualities of Defendants' services and Google's products and services.

85. Defendants have made such statements in commercial advertising or promotion in interstate commerce, namely, in interstate telephone solicitations and on Defendants' websites that are directed at consumers in interstate commerce.

86. Defendants' false and misleading claims are material to consumers because the claims are likely to induce consumers to purchase Defendants' services, and in fact have induced consumers to purchase Defendants' services.

87. Defendants' claims are likely to deceive a substantial segment of the buying public and, on information and belief, have already deceived a substantial segment of the buying public.

88. Defendants' claims are likely to influence the buying decisions of consumers and, on information and belief, have already influenced the buying decisions of consumers.

89. Defendants' deceptive conduct has injured and continues to injure consumers, and is likely to cause and has caused harm to Google. Unless Defendants are enjoined by this Court pursuant to 15 U.S.C. § 1116, Defendants will continue to mislead the public and cause harm to Google.

90. Defendants' false and misleading claims are deliberate, willful, fraudulent, and without extenuating circumstances. Defendants' conduct is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Google is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

## COUNT 4: FEDERAL TELEMARKETING AND CONSUMER FRAUD AND ABUSE PROTECTION ACT (15 U.S.C. § 6101 *ET SEQ.*)

91. Google re-alleges and incorporates by reference all preceding paragraphs as if fully set forth here.

92. Through its pattern and practice of placing telephone calls to Business Profile owners as part of its fraudulent scheme to extort payment, G Verifier carries out a plan, program, or campaign which is conducted to induce purchases of goods or services within the meaning of 15 U.S.C. § 6106(4).

93. G Verifier's false and misleading express and implied statements during its telemarketing calls regarding its identity and/or its affiliation with Google violate 16 C.F.R. § 310.3(a)(2)(vii), which prohibits telemarketers from misrepresenting an "affiliation with, or

endorsement or sponsorship by, any person."

94.     G Verifier's false and misleading express and implied statements during its telemarketing calls regarding required payments to avoid deactivation of Business Profile listings, removal of reviews, or other adverse consequences violate 16 C.F.R. § 310.3(a)(2)(iii), which prohibits telemarketers from misrepresenting "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." G Verifier's phone calls aim to sell a service that does not exist, and thus misrepresent nearly everything about what they are selling.

95.     Google is adversely affected by G Verifier's wrongful and unlawful use of the GOOGLE mark in its telemarketing practices, and because G Verifier has forced Google to incur expenses to investigate and address G Verifier's fraudulent and deceptive telemarketing practices, Google has suffered damages in excess of $50,000 as a result of G Verifier's actions. Defendants' deceptive conduct has injured and continues to injure consumers and Google. Unless Defendants are enjoined by this Court pursuant to 15 U.S.C. § 6104, Defendants will continue to mislead the public and cause harm to Google. The harm suffered by Google to the substantial goodwill and reputation of its trademarks and associated products and services will be irreparable, and the nature and extent of such harm is unascertainable and immeasurable.

## COUNT 5:  UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES UNDER OHIO COMMON LAW AND OHIO REV. STAT. § 4165.02

96.     Google re-alleges and incorporates by reference all preceding paragraphs as if fully set forth here.

97.     Google owns the inherently distinctive, strong, valid, and federally registered GOOGLE mark and G Logo, in addition to common law trademark rights nationwide (including within the state of Ohio) in both such marks.

28

98.     Without Google's consent, Defendants have marketed and sold in commerce services in connection with the GOOGLE mark and logos that are confusingly similar to the G Logo.

99.     Defendants' actions as described herein have caused and are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendants with Google, as to the true source of Defendants' services, which are passed off as Google's, and as to the sponsorship or approval of Defendants or Defendants' services by Google.

100.    In addition, Defendants have misrepresented that their services have benefits or qualities that they do not have, and have misrepresented that certain services and benefits provided by Google must be paid for when they are free.

101.    The foregoing conduct has taken place within the state of Ohio, and has harmed and is likely to harm consumers within this state.

102.    Defendants' conduct as described herein violates Ohio Rev. Code § 4165.02(A)(1)-(4) and (7) and Ohio common law.

103.    Google has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court. Google has no adequate remedy at law in that the amount of harm to Google's business reputation and the diminution of goodwill of Google's trademarks and its business reputation are difficult to ascertain with specificity. Google has also suffered actual damages as a result of the conduct described herein. Google is therefore entitled to injunctive relief and recovery of its actual damages pursuant to Ohio Rev. Code § 4165.03(A) and Ohio common law.

104.    Defendants willfully engaged in the deceptive trade practices described herein,

29

knowing them to be deceptive, in violation of Ohio Rev. Code § 4165.02(A)(1)-(4) and (7). Google is therefore entitled to reasonable attorneys' fees pursuant to Ohio Rev. Code § 4165(B).

**COUNT 6: BREACH OF CONTRACT**

105.    Google re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

106.    By posting content using Search or Maps via Google accounts, G Verifier entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS when creating the Google accounts used to post such content, as set forth above.

107.    Google has fully performed its obligations under the TOS.

108.    As set forth above, Google is informed and believes that G Verifier breached its contractual obligations under the TOS by posting on Search and Maps deliberately fake content that was not based on real experiences, in violation of the TOS's prohibitions on "deliberately fake content," "incorrect content," "content that is not based on a real experience," and "[c]ontent that has been posted by a competitor to undermine a business or product's reputation."

109.    As set forth above, as a result of G Verifier's breach of the TOS, G Verifier has caused Google to be damaged in an amount to be determined at trial, including forcing Google to incur expenses to investigate and address G Verifier's fraudulent and deceptive practices.

**PRAYER FOR RELIEF**

WHEREFORE, Google respectfully requests the following relief:

A.    That Google be granted preliminary and permanent injunctive relief under 15 U.S.C. § 1117 and 15 U.S.C. § 6104, specifically, that Defendants and all of their officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert

30

or participation with them, be preliminarily and permanently enjoined from: (i) using the GOOGLE trademark or variations thereof in connection with the marketing, promotion, advertising, sale, or distribution of any of Defendants' products or services (except as reasonably necessary to identify Google's own products and services); (ii) using the G Verifier Logos, the G HyperLocal Logo (or any variations thereof), or any other mark that infringes Google's G Logo; (iii) using any false designation of origin or any false description that can, or is likely to, mislead the public, or individual members thereof, to believe that any product or service distributed, sold, offered for sale, or advertised by Defendant is in any manner associated with or approved of or sponsored by Google; (iv) representing in any manner that Defendants' products and services can result in a specific placement in Google search or otherwise misrepresenting Google's products and services or the performance of Defendants' products and services with respect to Google's; (v) representing in any manner that Defendants or its sales agents are endorsed or sponsored by Google, or represent or work on behalf of Google, or are affiliated or associated with Google; (vi) conducting telemarketing calls or any form of communication that engage in any of the conduct above; and (vii) engaging in any other infringing or misleading conduct discovered during the course of this action;

**B.** That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

**C.** That Defendants are adjudged to have violated 15 U.S.C. § 1114(1) by infringing the GOOGLE mark and the G Logo;

**D.**    That Defendants are adjudged to have violated 15 U.S.C. § 1125(a)(1)(A) by using a false designation of origin for Defendants' products and services and engaging in unfair competition;

**E.**    That Defendants are adjudged to have violated 15 U.S.C. § 1125(a)(1)(B) for false advertising;

**F.**    That Defendants are adjudged to have violated 15 U.S.C. § 6102 by conducting a pattern and practice of telemarketing in violation of 16 C.F.R. § 310.3(a);

**G.**    That Defendants are adjudged to have breached Google's TOS;

**H.**    That Defendants be permanently enjoined from advertising or posting fake Google reviews or any reviews not based on a user's actual experience of the associated business's goods or services, and from advertising, selling, or purporting to sell such services;

**I.**    That Google be awarded damages in an amount sufficient to compensate it for damage caused by Defendants' acts;

**J.**    That this Court order an accounting of Defendants' profits pursuant to Defendants' unlawful activities and award all of the said profits to Google;

**K.**    That Google be awarded three times Defendants' profits and three times Google's damages suffered as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

**L.**    That Google be awarded pre-judgement and post-judgment interest; and

**M.**    That Google be awarded its reasonable attorneys' fees and costs.

### <u>DEMAND FOR A JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Google hereby respectfully demands a trial

by jury of all issues triable of right by a jury.

Dated: November 29, 2022

VORYS, SATER, SEYMOUR, AND
PEASE LLP


By: *s/ William G. Porter*
    William G. Porter (17296)
    *Trial Counsel*
    wgporter@vorys.com
    52 East Gay Street
    Columbus, OH 43215
    Telephone: +1 614 464 6400

    Karey E. Werner
    kewerner@vorys.com (95685)
    200 Public Square, Suite 1400
    Cleveland, OH 44114
    Telephone: +1 216 479 6100

COOLEY LLP

    Whitty Somvichian
    wsomvichian@cooley.com
    (*pro hac vice forthcoming*)
    Reece Trevor
    rtrevor@cooley.com
    (*pro hac vice forthcoming*)
    3 Embarcadero Center, 20th Floor
    San Francisco, CA 94111-4004
    Telephone: +1 415 693 2000
    Facsimile: +1 415 693 2222

    Rebecca Givner-Forbes
    rgf@cooley.com
    (*pro hac vice forthcoming*)
    Jessica Williams
    jwilliams@cooley.com
    (*pro hac vice forthcoming*)
    1299 Pennsylvania Ave. NW, Suite 700
    Washington, DC 20004-2400
    Telephone: +1 202 842 7800
    Facsimile: +1 202 842 7899

    Attorneys for Plaintiff Google LLC

273882268